The next case call for oral argument is People v. Dauber Thank you. May it please the court, counsel. This is a state appeal from an order suppressing evidence seized from defendant's home pursuant to a search warrant. There were three categories of evidence in the affidavit that supported that warrant. Two of them were stricken by the trial judge, and the people appealed both of those decisions. The first category of stricken evidence was evidence of the smell of cannabis coming from outside the defendant's open entryway door. This was stricken pursuant to Franks v. Delaware. The second category of stricken evidence was evidence of the smell of cannabis coming from inside the defendant's open entryway detected by two police officers who passed through defendant's open entryway door to knock upon defendant's kitchen door. This odor was detected both inside the defendant's mudroom before the defendant opened the kitchen door and was detected more strongly when the defendant opened this kitchen door. And it's that second finding that I'd like to especially focus on here today. The first thing that I want to stress is that these two findings by the trial judge were completely separate and independent from each other. And I'm stressing this point because the defendant in his answer brief states that the officers stated, that the state argued that they entered the mudroom because of the smell of cannabis detected outside the mudroom, and therefore they asserted they had probable cause to enter it. That's not what the state argued below or here. In fact, the state's position below and here that the officers did not need probable cause to pass through the open mudroom door and to knock upon the defendant's kitchen door. Well, the trial court specifically found that the defendant had a reasonable expectation of privacy in the mudroom and that the officers violated that expectation by proceeding through the mudroom. That is so. That is correct. And that's part of this second category you're talking about of striking evidence, right? In other words, the trial judge said they shouldn't have been there in the first place. That is correct. The category that I was referring to was the smell of cannabis inside the mudroom. And yes, it was the trial judge's position that they did not have a right to be where they were when they smelled the odor of cannabis inside the mudroom and more strongly when the defendant opened the kitchen door. As far as the outside, the trial judge basically said he didn't believe that. Basically, yes, under Frank's either that it was false or that it was made with reckless disregard. Please mention the five feet throughout the briefs. And what was the distance in the mudroom between the entrance, the door that they said was ajar, and the door into the kitchen? I believe it was variously described as the defendant's brother said it took about three steps to get from one door to the other. It was variously described as, I believe, between five feet and nine feet. There's a picture of the side wall of the space, and there's a washing machine, a dryer, and a little bit of extra space next to one of those appliances, so however long that is. The second point that I want to stress here is that the judge did not explicitly find subjective expectation of privacy in this space. In fact, there's no evidence from which he could have found that the defendant bore this burden of proving a subjective expectation of privacy. First, there's no direct evidence on the point. The defendant didn't testify himself, and his brother didn't state what the defendant subjectively expected. Second, there's no other evidence from which the trial judge or this court could conclude that the defendant took steps necessary to guard this space from disclosure. He did not act as though he expected privacy in the space. To use the language from People v. Pittman, the Illinois Supreme Court case, he did not, quote, avoid anything that would publicly undermine his assertive expectation of privacy in the space. First, and this is conceded by the defendant, he used this space as an entryway. The defendant's brother testified that each and every guest to the defendant's home passed through this space on their way into the interior living quarters of this home. Second, and again, this is conceded by the defendant, the mudroof door was open. It was wide open. Well, they had observed he and another person loading or unloading something out of a truck, and he went back in and left the door open. That's precisely right. So if he had left the actual front door open, would the police have been able to just walk in his front door? Would that have meant there was no expectation of privacy in the house at all? If you're referring to the kitchen door. No, I'm referring to the front door of the house, the place they went and knocked the day before. Right. I mean, is leaving the door open to your home mean the police can walk in? That's my question. But you're arguing, basically. Well, Your Honor, and it's a funny thing because I was thinking about that on the drive up here. I didn't find a case presenting that particular factual scenario, although I would note that in such a case there would be other indicia that the defendant expected privacy in that space. This case involves the door to basically a covered porch in which there were many other indicators that he did not expect privacy in that space. The defendant's architecturally front door was equipped with a lock and had covered windows, and the home inside was presumably a different air temperature than the January afternoon on which this occurred. None of those facts are true when we're talking about this back area, this mudroom. I'd also point out that for Fourth Amendment purposes, the defendant's kitchen door was his front door. The defendant's brother testified that this other door of which you speak was only used when they were moving something in and out of the house, but that the defendant used the kitchen door to which this mudroom led as his front door. It was in use that day. Doesn't a door communicate an expectation of privacy? Certainly one indication of a subjective expectation of privacy is a closed door. I mean a door. A door is something that if used can inhibit transfer or transportation from one area to another. Doesn't the existence of the door itself, if it's ever closed, indicate an expectation of privacy? Well, in this case, Your Honor, I'd note that if you're asking whether if the defendant ever had that door closed. No, I'm not. I'm not. A door is an impediment to passage or transportation. At some times for some activities it may be open, it may be closed. Doesn't the existence of a door and the use of a door indicate a subjective intent of expectation of privacy in that area that the door impedes transportation? Well, the people have cited several cases in which a porch or an enclosed entryway had a door and officers passed through that space and knocked upon an interior door, for example, people versus air. A porch is different than a mudroom, isn't it? This space had walls, and that's true. It was not an open air porch. The porch in areas also had walls, as did the porches in anterooms in the cases people cited from other jurisdictions, Edgeburg, Tierney, and the like. What matters here is the defendant's subjective expectation here. Here the defendant did not exhibit a belief that this space would remain private. Were the washer and dryer functional? Was he using it as a laundry room? Doesn't that distinguish this case somewhat from areas where it was more of a storage situation? Well, Your Honor, I'd argue simply that the facts here show that, first, yes, the laundry appliances work. There were actually three kept in this space, and two of them were functional. You can finish there. Thank you. Two were functional and one wasn't. I'd argue here that the presence of these appliances didn't magically transform this space. But it showed an intent to use it in a different way than in some of the cases where it's just storage of items that aren't really utilized in everyday life and is part of the house. I'd argue that, well, for example, some porches have barbecue grills on them that are used. What if he had an open-air porch with a barbecue grill on it that he'd use once a week sitting next to a patio table and chairs that he ate at once a week also? I think one of your briefs cited a case in which the court suppressed evidence that was found inside a barbecue grill on a porch. Exactly so. But the difference here is that the officers entered the space to knock upon the kitchen door, not to search the space or open, for example, the appliances. This was a space with more than one function, just like the porch in areas served as both an entryway and a storage space. Thank you, counsel. Counsel? May it please the court. Counselor? My name is Lawrence O'Neill. I represent Curt Dauber in this clause. Mr. Dauber asked for honors to affirm the trial court's suppression of the search warrant and the fruits of the search because the judge's rulings were not manifestly erroneous. First, in response to the state's claim that Mr. Dauber did not testify and therefore did not assert his right of expectation of privacy in the room, I cited cases where the owner controls and owns the residence. It's implied that he has the right to exclude, and counsel commented there's an implied expectation of privacy in that residence. But more importantly, regarding the expectation of privacy, the facts demonstrate that Mr. Dauber had an expectation of privacy in the laundry room, mudroom, and that society would recognize that expectation as reasonable. First, as your honors had alluded to, this was a fully enclosed structure. Walls, solid walls. It wasn't open whatsoever. It was also structurally attached to the interior of Mr. Dauber's home. It was a functioning adjunct of his domestic life. The evidence was clear that it was an operable washer and dryer inside the laundry room. There's a couple of photographs that show a basket, a hamper basket of laundry right next to the washer and dryer. Laundry detergent. Mr. Dauber kept his work tools in this room. So clearly there was a heater in the room. The evidence is overwhelming that Mr. Dauber had an expectation of privacy in that room, and that society would recognize it as such. Society would not recognize the fact that his door, a solid door, was left open for roughly a 45-minute period, which could have been open because it was a very windy day, perhaps. But society would not recognize just the fact that the door was open, that that was indicating an intention to allow the public to enter that room, or to allow the police to enter that room, or that it was a delinquishment of his expectation of privacy in the room. Again, this room was attached to his house, led directly to the interior of his house. The trial judge's finding that there was an expectation of privacy in that room was reasonable and correctly decided, and Mr. Dauber asked your honors to affirm that part of the court's order. Are there any other questions regarding the expectation of privacy regarding the room? I cited a case, as Justice Stewart mentioned, People v. Payton, where the court found that the defendant had a reasonable expectation of privacy in his barbecue grill.  I cited another case, People v. McNeil, where the court found that there was a reasonable expectation of privacy in a garage that was structurally attached to the residence. This was not a case where this was a porch separated from the house, open to the public, open to the police. This was a confined, structurally attached, fully enclosed room that was part of the domestic economy of Mr. Dauber's household. And once there are any other questions on expectation of privacy, I'd like to move on to the judge's finding regarding the officer's statements in the affidavit for search warrants, regarding the officer's statement that he smelled raw, or a small cannabis, the affidavit states. The judge's finding is recorded in great deference here. He was able to evaluate the demeanor of the witnesses, and he made a factual finding regarding the officer's statements based upon their testimony at the suppression hearing. The officer, Fisher, stated in his affidavit that he smelled cannabis. At the suppression hearing, Officer Fisher stated that he smelled both raw and burnt cannabis emanating from the house. The other officer testifying at the suppression hearing, Officer Fisher, testified that he smelled just raw cannabis emanating from the laundry room, which the judge found not credible. The cannabis was discovered after the search warrant was executed, inside the house, possibly as much as 30 to 50 feet away from the location where the officers allegedly smelled the cannabis outside the laundry room. Using common sense, ordinary experience, the judge disbelieved the officer's claim. He smelled raw cannabis emanating from the mudroom through a kitchen door as much as 30 to 50 feet from the location where the raw cannabis was eventually discovered. The cannabis that was found, as I understand it, was found in bags inside a safe? Correct. Inside a closet? Correct. 30 or 40 feet away from the door? Correct. And the judge disbelieved that factual finding. And I believe, you know, that if we accord the proper deference to that judge's findings, your honors, Mr. Daugherty asked your honors to affirm that factual finding and quash the search warrant, affirm the quashing of the search warrant, based upon those statements that were false or made in disregard for the truth. So we have reasonable expectation of privacy in a room that is structurally and functionally enclosed and attached to Mr. Daugherty's house. We have police statements in the affidavit of the search warrant that the judge found not credible and quashed. That decision requires great deference by his court. Thirdly, and impliedly, the judge's finding, where he ruled that because the affidavit for search warrant purged of the statements that were determined to be false, and that the fruits of that unlawful entry, and the counsel mentions, the judge found that entering was unlawful, and any evidence of that entering was unlawful. Any evidence obtained therefrom, the smell intensified, the officers testified as they walked through the microphone, because the officers did not have a right to be there. That evidence also is stricken from the search warrant because it was fruits of the unlawful entry. But finally, the affidavit of the search warrant also included references to a confidential source's information, who told the police that she had been at Daugherty's house two days before this search, and she witnessed a great deal of marijuana. Now, the judge ruled that purging the affidavit of the statements that were found to be false or made with disregard for the truth, the judge found that there was no probable cause to issue the search warrant. So impliedly, the judge ruled that the confidential source's information was not sufficiently reliable to issue a search warrant. And that is because the confidential source, the evidence did not establish that the confidential source had provided reliable information to the police before. The confidential source did not indicate that she knew with personal knowledge that there would be marijuana at Daugherty's residence on this particular day. So the reliability of the confidential source dissipates the statements contained in the affidavit alleging probable cause based upon the information provided by the confidential source. In all, Your Honors, with reasonable expectation of privacy in this room, the judge's factual findings regarding the officer's statements in the affidavit of the search warrant are not against the manifest weight of the evidence. Mr. Daugherty asks Your Honors to affirm the trial court's suppression orders. Are there any other questions, Your Honors? I don't believe there are. Thank you, Counsel. Counsel? Thank you. With regard to the smell outside the mudroom, I'll stand on the people's briefs on that unless there are questions about that argument or about the facts. Otherwise, I'd like to state that the counsel stated that the mudroom door was a solid door. And in fact, the trial judge stated in his order that it was a solid door and that the mudroom contained no other windows. But the people's brief and the appendices to that brief of the photographs taken of the space clearly show two windows. One taking up the entire top half of this mudroom door and another in the left-hand wall of the space. And I'd note that the defendant's answer brief concedes the existence of these windows. So this shows not only that the windows existed and, again, they were completely uncovered glass, but also that the trial judge made these findings of fact against the manifest weight of the evidence. The court can see the windows for themselves by examining the photographs. Does having a window in it make it not a solid door? Well, it's solid in the sense that… There's more than one interpretation of the trial court's finding. I mean, he says it's a solid door. It is a solid door. You can't put your hand through it. It's a window. He also stated there were no windows in the space, and clearly that's not so. The court can see the pictures for itself. And also the uncovered windows have been held to be proof that there's no subjective expectation of privacy in the space. People v. Hicks, a case involving a motel room. I'd also note that this door did not have a lock, was not equipped with a lock. And I want to stress that point because the defendant's answer brief states that the door was equipped with a lock. In fact, there's no evidence in the record that it was. And the defendant's brother testified that the first door that locked was the kitchen door. The bedroom door could merely be, quote, closed tight. In response to the defendant's argument that he possessed a subjective expectation of privacy in the space because he possessed the space, well, of course he possessed it. It was the entryway to his home. A man's home is his castle, but every castle had a door. Do you think he wanted people going through his dirty laundry? Well, he had an expectation of privacy in his appliances. This isn't a case like Payton in which officers rifled through his belongings. This was a space, as I said, that had more than one use. There was testimony that the door was open for 45 minutes, and I think the defendant suggests that this amount of time between 45 minutes to an hour was not enough time for any subjective expectation of privacy in the space to escape if the door was usually kept closed. And I point out that in Pupil v. Hobson, a case cited in the Pupil's brief, a garage door, a garage, by the way, not used as an entryway as the space here, a garage door was opened by the defendant who was inside stripping a car, a stolen car, and the officers immediately arrested the defendant in the space between the threshold of the garage door and the sidewalk and then entered without a warrant. And the court held that when he opened this door, any reasonable expectation of privacy in the space immediately dissipated. And similar language is to be found in Pittman and in Katz itself, United States v. Katz. So I'd argue that 45 minutes was more than enough time here. I'd also note that every entryway or porch is, of course, attached to the rest of the home, that that's not a dispositive feature of this space. And in McNeil, again, the garage wasn't used as an entryway as the space here. Are there any questions? I don't think there are. Thank you. We appreciate the briefs and arguments of all counsel. We'll take the case under advisement. Court will be in a short recess.